MICHAEL H. HOLLAND, et al., as
Trustees of the United Mine Workers of
America 1974 Pension Trust,

      Plaintiffs,

and

UNITED MINE WORKERS OF
AMERICA,

      Intervenor-Plaintiff,

         v.

ACL TRANSPORTATION SERVICES,
LLC,

      Defendant.

Civil Action No. 11-515 (JDB)

## MEMORANDUM OPINION

On March 10, 2011, the Trustees of the United Mine Workers of America 1974 Pension Trust ("Trustees" or "plaintiffs"), brought this suit under the Employee Retirement Income Security Act, 29 U.S.C § 1001 et seq. ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. § 141 et seq. ("LMRA"), seeking "delinquent contributions due and owing" to the United Mine Workers of America 1974 Pension Trust ("Trust") from defendant ACL Transportation Services, LLC ("ACLTS" or "defendant"). Compl. [Docket Entry 1] ¶ 1. According to the Trustees, ACLTS has failed to make contributions to the Trust as required by the Evergreen Clause in the Trust's governing documents, which has been incorporated by reference into

ACLTS's collective bargaining agreements with the United Mine Workers of America ("UMWA"). Id. ¶¶ 1-2, 12. ACLTS defends on the ground that it has, in fact, fulfilled its obligation to contribute to the Trust, but that this obligation ceased upon expiration of its 2008 collective bargaining agreement with UMWA ("2008 CBA"), which allegedly occurred on March 16, 2011. See Def.'s Mot. to Dismiss, or in the Alternative, to Stay, or Transfer Pls.' Compl. ("Def.'s Mot.") [Docket Entry 3] at 3. ACLTS now seeks to withdraw permanently from participation in the Trust, subject to any withdrawal liability imposed by ERISA. See id. at 3-5. To that end, ACLTS commenced a separate action against the 1974 Pension Plan, its Trustees, and UMWA in the Eastern District of Missouri on March 18, 2011, seeking a declaratory judgment that it is not obligated to make contributions to the Trust in perpetuity. See id. at 5; Def.'s Mot., Ex. 6 ("Missouri Compl.") ¶ 2.

On April 26, 2011, this Court granted UMWA leave to intervene, and UMWA filed a complaint as an intervenor-plaintiff, asserting the same claims raised by the Trustees against ACLTS. See Intervenor Compl. [Docket Entry 10] ¶¶ 1, 10, 12, 15. Presently before the Court are ACLTS's motions to dismiss the Trustees' complaint for lack of subject matter jurisdiction, and to dismiss UMWA's complaint for failure to state a claim upon which relief can be granted. See Def.'s Mot. at 6-7; Def.'s Mot. to Dismiss, or in the Alternative, to Stay or Transfer Intervenor Pl.'s Compl. ("Def.'s Mot. to Dismiss") at 4-6. ACLTS maintains that plaintiffs' claims are moot and that UMWA's complaint raises issues identical to those in the action that ACLTS filed against UMWA in Missouri. Id. In the alternative, ACLTS has moved to either stay this action pending the decision of the Eastern District of Missouri, or to transfer this action to the Eastern District of Missouri. Def.'s Mot. at 1; Def.'s Mot. to Dismiss at 1. Since the filing

of these motions, the related action in the Eastern District of Missouri has been transferred to this Court and consolidated with plaintiffs' case.  See Notice of Transfer [Docket Entry 18]; 7/15/11 Order [Docket Entry 20].  Accordingly, and for the reasons explained below, the Court will deny ACLTS's motion to dismiss, stay, or transfer as to both the Trustees' and UMWA's complaints.

## BACKGROUND

For many years, UMWA has negotiated collective bargaining agreements ("CBAs") with ACLTS on behalf of UMWA members employed at ACLTS's facility in St. Louis, Missouri. See Def.'s Mot. at 2; Missouri Compl. ¶¶ 24-26.  Defendant's business operations at its St. Louis facility consist of rail-to-barge coal storage and transloading along the Mississippi River.  Def.'s Mot. at 2.  In accordance with the parties' agreements, defendant has participated in the UMWA 1974 Pension Plan ("Plan") and Trust since 1981, contributing to the pension fund on behalf of its eligible employees.  Missouri Compl. ¶ 24.  The Trust, which has been effective since 1974, is a continuation of a benefit program established under the UMWA Welfare and Retirement Fund of 1950, and is intended to "provid[e] benefits to retired coal miners and their dependents through a pension plan known as the United Mine Workers of America 1974 Pension Plan." Compl. ¶ 10.  Employers participating in the Plan and Trust operate across the country in states with coal deposits as well as in states in which coal is processed or transported.  Pls.' Opp'n to Def.'s Mot. ("Pls.' Opp'n") [Docket Entry 7] at 21.  The Trust is administered by plaintiffs in Washington, D.C.  Compl. ¶ 6.

ACLTS is not, and has never been, a member of the Bituminous Coal Association ("BCOA").  Def.'s Mot. at 2; Missouri Compl. ¶ 14.  However, ACLTS's CBAs with UMWA, due to its participation in the Trust, have long been structured to incorporate the terms of the

National Bituminous Coal Workers Agreement ("NBCWA") -- an agreement negotiated by UMWA and BCOA on behalf of employers in the bituminous coal industry. Compl. ¶ 12; Pls.' Opp'n at 2; Missouri Compl. ¶ 25. Each NBCWA sets the rate at which employers participating in the Trust are required to contribute to the fund on behalf of the qualifying workers they employ. Compl. ¶ 11. In 1978, the terms of the Trust were amended during the course of negotiations between BCOA and UMWA to include a clause known as the Evergreen Clause. Id.; Pls.' Opp'n at 18. The Evergreen Clause binds participating employers to contribute to the Trust as prescribed by the prevailing NBCWA, regardless of whether the employer is a signatory to the NBCWA. Compl. ¶ 11. Specifically, the Evergreen Clause provides that

> [a]ny Employer who employed any participant eligible for coverage under, or who received or receives benefits under, the 1974 Pension Plan, or any Employer who was or is required to make, or who has made or makes contributions to the 1974 Pension Plan and Trust, is obligated and required to comply with the terms and conditions of the 1974 Pension Plan and Trust . . . including . . . making contributions required under the National Bituminous Coal Wage Agreement of 1978 . . . and any successor agreements thereto.

Id.

Up until the 2008 CBA, the agreements between ACLTS and UMWA had incorporated the terms of the Trust by reference. Missouri Compl. ¶ 25. But in July 2008, representatives from ACLTS and UMWA convened in St. Louis, Missouri to negotiate a new collective bargaining agreement, which did not explicitly incorporate the terms of the Trust. Compl. ¶ 14; Def.'s Mot. at 3. The 2008 CBA did, however, require ACLTS to continue contributing to the Trust at the rate established in the prevailing NBCWA, which at the time was the 2007 NBCWA. Compl. ¶¶ 14-15; Missouri Compl. ¶ 28. In anticipation of the impending expiration of the 2008 CBA on December 31, 2010, ACLTS and UMWA met in December 2010 to begin negotiating a

new CBA.  Def.'s Mot. at 3.  On December 22, 2010, the parties entered into a Contract

Extension Agreement, under which they agreed to abide by the terms of the 2008 CBA "until a

new agreement [wa]s reached or . . . [e]ither party . . . terminate[d] the agreement by providing

thirty (30) days written notice."  Id.; see also Def.'s Mot., Ex. 3.

On February 14, 2011, ACLTS notified the Trustees of its intention to terminate the 2008

CBA, explaining that its continued participation in the Trust would cause "severe harm" to its

business interests.  Def.'s Mot. at 3, 5.  In light of the 30-day notification requirement, ACLTS

considered the 2008 CBA to have expired on March 16, 2011 (and with it, ACLTS's obligation

to continue contributing to the Trust).  Id. at 3.  ACLTS therefore stopped making contributions

to the Trust.  See id. at 4.  The Trustees responded by initiating this action on March 10, 2011,

alleging that, pursuant to the Evergreen Clause, ACLTS is still obligated to make payments to

the Trust at the rates set forth in the 2007 NBCWA.  See Compl.  Eight days later, ACLTS

initiated its own suit in the Eastern District of Missouri, seeking a declaratory judgment that it is

not required to contribute to the Trust in perpetuity.  Missouri Compl. ¶ 2.

At some point in March 2011, ACLTS learned that it had failed to make payments to the

Trust for the months of January and February 2011, as required by the parties' extension of the

2008 CBA.  Def.'s Mot. at 3-4.  ACLTS then proceeded to fulfill its payment obligations through

March 16, 2011, the date on which it deemed the 2008 CBA to have expired.  Id.  In addition to

making these payments, ACLTS offered to pay any interest accrued and requested that plaintiffs

dismiss their suit.  Id. at 5; id., Exs. 4-5.  ACLTS also expressed its willingness to pay the

withdrawal liability imposed by ERISA in order to withdraw from participation in the Trust.

Def.'s Mot. at 5.

On April 26, 2011, UMWA filed its intervenor complaint in this case, seeking "injunctive and other relief requiring Defendant to comply with its contractual obligations to the United Mine Workers 1974 Pension Plan and Trust, as required by a series of consecutive collective bargaining agreements entered into between [ACLTS] and the UMWA and by the express terms of the 1974 Pension Plan and Trust incorporated by reference therein." Intervenor Compl. ¶ 1. Then, on June 28, 2011, the Eastern District of Missouri ordered the transfer of ACLTS's suit to this District, on the ground that this suit was filed first. See ACL Transp. Servs. v. United Mine Workers of Am. 1974 Pension Plan, No. 4:11-CV-0521 JCH, 2011 WL 2564969, at *2 (E.D. Mo. June 28, 2011). Shortly thereafter, this Court ordered that the two related cases be consolidated. See 7/15/11 Order [Docket Entry 20].

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), a plaintiff bears the burden of establishing that the court has jurisdiction to hear his claims. The court, in turn, has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," see Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to consider the possibility of mootness. See Mine Reclamation Corp. v. Fed. Energy Regulatory Comm'n, 30 F.3d 1519, 1522 (D.C. Cir. 1994). Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A CHARLES A. WRIGHT & ARTHUR R.

MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2D ED. 1990)).  A court may also consider material beyond the allegations in the complaint when determining whether it has jurisdiction to hear the case, so long as it accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

When a party alleges that the court lacks jurisdiction on grounds of mootness, the burden of demonstrating mootness "is a heavy one" that falls on the party asserting such a claim.  United States v. W.T. Grant Co., 345 U.S. 629, 632-33 (1953).  "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Cnty. of L.A. v. Davis, 440 U.S. 625, 631 (1979) (citing Powell v. McCormack, 395 U.S. 486, 496 (1969)).  As a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot."  W.T. Grant, 345 U.S. at 632; see also U.S. v. Concentrated Phosphate Export Ass'n, 393 U.S. 361, 203 (1968) (explaining that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case").  This is so because, "while the defendant's unilateral cessation of the challenged conduct may grant the plaintiff relief, the defendant is 'free to return to [its] old ways' – thereby subjecting plaintiff to the same harm but, at the same time, avoiding judicial review."  Qassim v. Bush, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (per curiam) (citing W.T. Grant, 345 U.S. at 632; City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 (1982)) (alteration in original).

## ANALYSIS

I.     **Motion to Dismiss on Grounds of Mootness**

Here, ACLTS argues that plaintiffs' claims for contributions to the Trust have been

mooted by defendant's fulfillment of its obligations under the 2008 CBA.[1]  As previously

explained, a claim is moot when it no longer presents a live controversy between the parties and

when neither party maintains a "legally cognizable interest" in the determination of such

controversy.  See Davis, 440 U.S. at 631.  The doctrine of mootness serves to ensure that parties

"continue to have a 'personal stake in the outcome' of the lawsuit," such that plaintiffs face "an

actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial

decision."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990); see also Allen v. Wright,

468 U.S. 737, 750-51 (1984).  The Supreme Court has emphasized that a defendant's burden in

demonstrating mootness is substantial, and "[i]t is well settled that a defendant's voluntary

cessation of a challenged practice does not deprive a federal court of its power to determine the

legality of the practice."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 189

(2000) (internal quotation marks omitted).

    The dispute between the parties in this case, as accurately characterized by plaintiffs,

centers on whether and to what extent ACLTS is bound to continue contributing to the Trust

pursuant to the Evergreen Clause.  That dispute remains ongoing, even though ACLTS has now

made contributions to the Trust through March 16, 2011, in accordance with the extension of the

2008 CBA.  Despite ACLTS's assertion to the contrary, plaintiffs' complaint does not merely

seek contributions to the Trust through March 16, 2011.  See Compl. ¶ 1.  Rather, plaintiffs

demand all "delinquent contributions due and owing" to the Trust.  Id.  Plaintiffs' complaint

plainly asserts that ACLTS has "failed and continues to fail to make contributions to the . . .

---

[1]  ACLTS's assertion of mootness here stands in stark contrast to the position it took in the
Eastern District of Missouri, where it requested a declaratory judgment that it was no longer
obligated to continue contributing to the Trust, and emphasized that there was a "question in
actual controversy" between the parties.  Missouri Compl. ¶ 1.

Trust for hours worked by its covered employees since January 1, 2011, as required by the Evergreen Clause." Id. ¶ 2 (emphasis added).

ACLTS's assertion that plaintiffs' claims are limited to claims regarding ACLTS's obligations under the 2008 CBA -- which have allegedly been fulfilled -- is unfounded. Plaintiffs' complaint acknowledges the 2008 CBA as the most recent CBA between the parties, but it does not suggest that the Trustees are only seeking contributions due under that agreement. Id. ¶ 14. Instead, plaintiffs contend that "[p]ursuant to the Evergreen Clause, [ACLTS] is obligated to make contributions to the 1974 Pension Trust at the rates set forth in the NBCWA of 2007," and that "[b]y failing to make the required contributions, [ACLTS] has breached its obligation to continue making contributions to the 1974 Pension Trust as required by successor agreements to the 1978 NBCWA, including the 2007 NBCWA." Id. ¶¶ 18, 23 (emphasis added). Because the Trustees have, with sufficient clarity, characterized their claim for contributions to the Trust as based on the Evergreen Clause, not the expired 2008 CBA, ACLTS's contention that it "has provided Plaintiffs with the specific relief they requested," Def.'s Mot. at 7, is incorrect. ACLTS's payment through March 16, 2011, could at most moot only plaintiffs' claims for delinquent contributions to the Trust due under the 2008 CBA, not plaintiffs' claims regarding ACLTS's continuing obligations to contribute to the Trust under the Evergreen Clause.

Moreover, ACLTS's assertion that it is not bound by the Evergreen Clause belies its claim that there is no live case or controversy between the parties. See Missouri Compl. ¶¶ 16-19, 22. In its briefing both here and in the related Missouri litigation that has since been consolidated with this case, ACLTS insists that it cannot be bound by the Clause because it has never been a member of the BCOA or party to a NBCWA, Def.'s Mot. at 15 n.5, and it disputes

whether the terms of the NBCWA could even apply to it, since it allegedly does not qualify as an "Employer" with a "wage agreement" for purposes of the NBCWA. Missouri Compl. ¶¶ 16-19, 22. ACLTS further contends that the 2008 CBA served to limit its obligations to the Trust, and ACLTS makes evident its intention to cease its participation in the Trust beyond the 2008 CBA. See id. ¶¶ 26-32; Def.'s Mot. at 2-3, 5. Plaintiffs directly refute these interpretations of defendant's obligations under the Evergreen Clause and the 2008 CBA, arguing that (1) ACLTS was not freed from its obligation to contribute to the Trust by the expiration of the 2008 CBA, and (2) ACLTS is bound by the Evergreen Clause to continue contributing in accordance with the terms of the Trust and the 2007 NBCWA. Id. at 7. Because plaintiffs and ACLTS disagree as to whether ACLTS is bound by the Evergreen Clause, and thereby required to continue making contributions to the Trust beyond the expiration of the 2008 CBA, a live controversy persists between the parties.

Finally, the Court notes that a case is only mooted by virtue of a defendant's voluntary cessation of allegedly illegal conduct when the "defendant shows that: (1) 'there is no reasonable expectation . . . that the alleged violation will recur,' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Larsen v. United States Navy, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting Davis, 440 U.S. at 631); see also Kifafi v. Hilton Hotels Retirement Plan, 616 F. Supp. 2d 7, 27 (D.D.C. 2009). Here, however, ACLTS has made clear that it seeks to withdraw permanently from its participation in the Trust, and it is therefore likely that the allegedly illegal conduct (i.e., failure to contribute to the Trust) will continue, despite defendant's "voluntary" fulfillment of its obligations under the 2008 CBA. Hence, there remains a live controversy between the parties: namely, whether the Evergreen

Clause imposes an obligation on ACLTS to continue making contributions to the Trust beyond the expiration of the 2008 CBA. Accordingly, plaintiffs' complaint is not moot.

## II.   <u>Motion to Stay</u>

District courts have the discretion to stay or dismiss a pending suit when parallel litigation that is factually related is ongoing in another forum. <u>Handy v. Shaw, Bransford, Veilleux & Roth</u>, 325 F.3d 346, 349 (D.C. Cir. 2003). Although "no precise rule has evolved" to govern such situations, the general principle is that courts should "avoid duplicative litigation." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) (citations omitted). This Circuit follows the well-established rule that "[w]here two cases between the same parties on the same cause of action are commenced in two different federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." <u>Wash. Metro. Area Transit Auth. v. Ragonese</u>, 617 F.2d 828, 830 (D.C. Cir. 1980) (citations omitted). To be sure, courts in this Circuit have warned against mechanically applying the first-filed rule if the second-filed action deserves priority, <u>see</u> <u>Columbia Plaza Corp. v. Sec. Nat'l Bank</u>, 525 F.2d 620, 628 (D.C. Cir. 1975), but "considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously," <u>Ragonese</u>, 617 F.2d at 830 (citations omitted); <u>see also</u> <u>Columbia Plaza</u>, 525 F.2d at 626 ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.").

Here, plaintiffs filed suit in this Court on March 10, 2011, and defendant filed its action in the Eastern District of Missouri eight days later. The Eastern District of Missouri, applying the first-filed rule, transferred ACLTS's case to this Court on June 28, 2011, and this Court

consolidated the two related cases on July 15, 2011.  Hence, there is no longer a related action in another district that could warrant the imposition of a stay, nor are there any other considerations of "judicial economy" that would be served by staying the consolidated proceedings in this Court.  See Al-Anazi v. Bush, 370 F. Supp. 2d 188, 199 (D.D.C. 2005).  Accordingly, the Court will deny defendant's motion to stay.

## III.  **Motion to Transfer**

Defendant also seeks transfer of this case to the Eastern District of Missouri.  Defendant's motion for transfer was, however, filed prior to the Eastern District of Missouri's transfer of defendant's related suit to this District.  Nevertheless, to the extent that defendants still contend that the Eastern District of Missouri is the more appropriate forum to hear these two consolidated cases, the Court disagrees.  Like the Eastern District of Missouri, this Court finds that the long-standing first-filed rule militates against transfer, as the first of these two cases was filed here.  See Ragonese, 617 F. 2d 828, 830 ("For more than three decades the rule in this circuit has been that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first.'").  Moreover, application of the traditional factors used to assess motions for transfer under 28 U.S.C. § 1404(a) weighs strongly against transfer.

Transfer of venue under § 1404(a) is appropriate where (1) venue is proper in the court to which transfer is sought, and (2) the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer.  See 28 U.S.C. § 1404(a).  In ERISA cases, venue is proper "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  Here, the Plan is administered in Washington, D.C. and

ACLTS resides in Missouri, see 28 U.S.C. § 1391(c) (explaining that a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"), thereby making venue proper in both this District and the Eastern District of Missouri.

In assessing a motion to transfer in an ERISA case, courts afford "special weight to a plaintiff's choice of forum," Flynn v. Veazey Constr. Corp., 310 F. Supp. 2d 186, 193 (D.D.C. 2004), because of the special ERISA venue provision that authorizes plaintiffs to bring actions "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2); see also Int'l Bhd. of Painters & Allied Trades Union v. Rose Bros. Home Decorating Ctr., Inc., Civ. A. No. 91-1699 (GHR), 1992 WL 24036, at *2 (D.D.C. Jan. 14, 1992). "By allowing the action to occur in the district where the plan is administered, the special venue provision makes collection efforts efficient, economical, and inexpensive for ERISA plaintiffs, fulfilling Congress's intent to protect the financial integrity of such funds." Veazey, 310 F. Supp. 2d at 193. For this reason, "[a] defendant requesting a transfer of venue in an ERISA case filed in the pension fund's home district faces an uphill battle, as the defendant must persuade the court that either the convenience of the parties or the witnesses, or the interest of justice, strongly outweigh[s] the substantial deference given to a plaintiff's choice of forum in these cases." Int'l Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc., 357 F. Supp. 2d 54, 58 (D.D.C. 2004).

Here, defendant has not succeeded in its "uphill battle" of establishing that transfer to the Eastern District of Missouri is warranted. Not only does the first-filed rule weigh against transfer, but the "private interest" and "public interest" factors traditionally relied upon by courts

evaluating motions to transfer also dictate that this case should remain in the District of Columbia. The private interest considerations that courts examine include: (1) the plaintiffs' choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. See Wilderness Soc. v. Babbitt, 104 F. Supp. 2d 10, 12 (D.D.C. 2000) (quoting Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (footnotes omitted)). Despite ACLTS's insistence that the heart of this matter is the 2008 CBA and the parties' intent in negotiating that agreement, the central dispute here actually is whether and to what extent the Evergreen Clause applies to ACLTS. Thus viewed, it is clear that the private and public interest factors bearing on defendant's motion to transfer all point toward hearing this case in the District of Columbia.

   1.  **Private Interest Factors**

    a.  <u>Choice of Forum</u>

  A plaintiff's choice of forum generally merits strong deference, and this factor weighs heavily against transfer in this case. The plaintiff's choice of forum has been deemed a "paramount consideration" in the evaluation of motions to transfer, Thayer/Patricof Educ. Funding v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (quoting Sheraton Operating Corp. v. Just Corporate Travel, 984 F. Supp. 22, 25 (D.D.C. 1997)); see also Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., 621 F. Supp. 906, 907 (D.D.C. 1985) (stating that "[t]he plaintiff's choice of forum is due substantial deference and,

unless the balance of convenience is strongly in favor of the defendants, should rarely be disturbed"), and deference to a plaintiff's choice of forum is only heightened where, as here, the plaintiff brings a claim under ERISA in the district where the plan in question is administered, see Fanning v. Trotter Site Preparation, LLC, 668 F. Supp. 60 (D.D.C. 2009) (citing Veazey, 310 F. Supp. 2d at 193; Rose Bros., 1992 WL 24036, at *2).  Some courts have even found that "[b]ecause of the special weight ERISA accords a plaintiff's choice of forum, the court need not engage in a lengthy analysis to determine that transfer is not warranted."  Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co., 569 F. Supp. 2d 113, 118 (D.D.C. 2008) (citing Veazey, 310 F. Supp. 2d at 193).

The Trustees' choice of venue also merits substantial deference in light of the significant connection between this District and the nature of the claims brought.  This Circuit has the benefit of experience with litigation related to the meaning of the Evergreen Clause and, because the Trust is administered in Washington, D.C., this District has an interest both in ensuring the Trust's continued uniform interpretation and in facilitating efficient collection efforts.  See, e.g., United Mine Workers of Am. 1974 Pension v. Pittston Co., 984 F.2d 469, 474 (D.C. Cir. 1993) (affirming the district court's determination that the Evergreen Clause imposed a "perpetual obligation" on participating employers to contribute to the pension fund); Holland v. Freeman United Coal Mining Co., 574 F. Supp. 2d 116, 125 (D.D.C. 2008) (declaring that the 2007 NBCWA is a successor agreement under the Evergreen Clause).  In fact, cases involving the 1974 Pension Trust at issue here that were originally filed in other districts have since been transferred to the District of Columbia because of this Circuit's experience with the Evergreen Clause and strong interest in its consistent interpretation.  See, e.g., In re United Mine Workers

-15-

of America Benefits Plan Litigation, 782 F. Supp. 658 (D.D.C. 1992). Hence, this District's interest in the consistent interpretation of the Evergreen Clause, together with plaintiffs' selection of this District as the chosen forum, weigh strongly against transfer.

### b. Where the Claim Arose

In considering a motion to transfer, the Court also examines whether there is a nexus between the underlying transactions giving rise to the claim and the forum selected. See, e.g., Gipson v. Wells Fargo & Co., 563 F. Supp. 2d 149, 158 (D.D.C. 2008). ACLTS argues that the Eastern District of Missouri is the appropriate district in which to litigate plaintiffs' claims because the underlying transactions at issue are more closely related to that district, given that "ACLTS is located in St. Louis, its employees receiving benefits from the Pension Trust work in St. Louis, and all the hours forming the basis for Defendant's contributions to the Pension Trust were worked in St. Louis." Def.'s Mot. at 15. However, plaintiffs' claims are rooted not in events that took place in St. Louis, but in the text and meaning of the Evergreen Clause in the governing terms of the Trust -- a pension fund that is administered in Washington, D.C. Hence, plaintiffs' claims more accurately can be said to have arisen in the District of Columbia.

### c. Convenience of Witnesses and Ease of Access to Sources of Proof

The ease of access to sources of proof is traditionally an important factor to assess in determining whether to transfer a case, Painting Co., 569 F. Supp. 2d at 119, but the location of documents has been made increasingly insignificant by the availability of electronic discovery and the use of depositions to secure witness testimony. See, e.g., Thayer/Patricof, 196 F. Supp. 2d at 36; Air Line Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 527 (D.D.C. 1987). Nevertheless, to the extent that it remains relevant, this factor weighs against transfer because

the most significant witnesses and sources of proof in this case are likely to be located not in the Eastern District of Missouri, but in the District of Columbia.

ACLTS contends that the witnesses and sources of proof bearing on the negotiation of the 2008 CBA are located in and around Missouri, rather than in and around Washington, D.C. See Def.'s Mot. at 11-14. However, as previously explained, this dispute centers on the meaning of the Evergreen Clause, not the 2008 CBA. Given this Circuit's history of interpreting the Evergreen Clause, much of the evidence surrounding the negotiation of the Evergreen Clause has already been compiled in this District and is located in boxes in the vicinity of Washington, D.C. See Pls.' Opp'n at 24-25, 26 n.14. Moreover, UMWA's headquarters is located just outside the District of Columbia, and witnesses who were involved in the addition of the Clause to the Trust documents are also located in this area. Id. Denying transfer to the Eastern District of Missouri would thus be more convenient for the relevant witnesses, and would facilitate ease of access to sources of proof. See Best Painting, 621 F. Supp. at 908 (denying transfer because plaintiff's records and witnesses central to the case were located in the District of Columbia).

> d. Convenience of the Parties

ACLTS urges that it would be significantly more convenient for ACLTS and its witnesses to litigate this action in the Eastern District of Missouri, given that ACLTS operates out of St. Louis. Def.'s Mot. at 14. However, transferring this action to Missouri would just "shift the balance of inconvenience from Defendant to Plaintiff," Tri-State Interiors, 357 F. Supp. 2d at 57, since it would be more convenient for plaintiffs to litigate in the District of Columbia. Merely shifting the inconvenience from one party to the other is not a sufficient reason to transfer. Id.

## 2. Public Interest Factors

### a. Transferee Court's Familiarity with Governing Law

ACLTS argues that the first public interest factor -- the transferee court's familiarity with governing law -- supports transfer because the Eastern District of Missouri would be more familiar with Missouri law, and Missouri law would govern the parties' contract dispute over the meaning of the 2008 CBA.  Def.'s Mot. at 18.  But because the parties' contract dispute arises under Section 301 of the LMRA, see Compl. ¶¶ 9, 24, federal law governs this case.  See Textile Workers of Am. v. Lincoln Mills, 353 U.S. 448, 456 (1957); see also Bush v. Clark Constr. & Concrete Corp., 267 F. Supp. 2d 43, 46 (D.D.C. 2003).  Section 301 "not only gives federal courts jurisdiction over claims involving labor contract disputes but also requires courts to apply federal substantive law to such disputes."  Clark Constr., 267 F. Supp. 2d at 46.  In fact, Section 301 reflects Congress's intent that "doctrines of federal labor law . . . uniformly prevail over inconsistent state rules."  Id. (citations omitted).  Hence, this factor does not justify transfer because Missouri state law is not the governing law and the Eastern District of Missouri holds no advantage over this Court in applying the federal law at issue in this case.

### b. Relative Congestion of Court Calendars

The second public interest factor, which calls for a comparison between the relative docket congestion in the District of Columbia and the Eastern District of Missouri, also does not support transfer.  Defendant claims that this factor weighs in favor of transfer given the greater docket congestion in the District of Columbia and the fact that the Eastern District of Missouri would likely be able to resolve this case more expeditiously than this Court.  See Def.'s Mot. at 18-19.  Defendant notes that, for a civil case, the median length of time from filing to trial in the

Eastern District of Missouri is 25.9 months, which is considerably lower than the median length of time in the District of Columbia (40.1 months). Id. at 19; see Def.'s Mot., Ex. 7 (Federal Court Management Statistics 2010). But while ACLTS focuses on the disparity in resolution time for cases that continue to trial, the majority of prior suits involving the Evergreen Clause -- handled in this District by the same counsel representing the Trustees here -- have been resolved on motions for summary judgment. See Pls.' Opp'n at 26 n.14, 28. With respect to matters that do not proceed to trial, there is an insignificant difference between the time from filing to disposition in the Eastern District of Missouri (seven months) and the District of Columbia (7.9 months). Id. at 28; see Def.'s Mot., Ex. 7. Because there has been no indication that this case will follow a different path than prior cases involving the interpretation of the Evergreen Clause, docket congestion does not weigh in favor of transfer to the extent that ACLTS suggests. Moreover, as explained above, this Circuit has the benefit of experience with litigation of matters involving the Evergreen Clause, see, e.g., Pittston, 984 F.2d 469; Freeman United, 574 F. Supp. 2d 116, which may facilitate a more efficient resolution of this case here, see, e.g., FTC v. Cephalon, Inc., 551 F. Supp. 2d 21, 31 (D.D.C. 2008) (finding that "th[e] case may be resolved more expeditiously" where the "court is already familiar with the facts and legal issues presented").

       c.      Local Interest in Deciding Local Controversies at Home

There is no local interest involved in this case because the controversy between the parties concerns a pension plan benefitting UMWA members across the country. ACLTS contends that Missouri has an interest in deciding an "inherently local controversy at home," Def.'s Mot. at 17-18, pointing to the fact that (1) the negotiations surrounding the 2008 CBA

-19-

took place in the vicinity of St. Louis; (2) the parties to those negotiations are located in and around Missouri; (3) the ACLTS employees whose pension funding is at issue work in St. Louis; and (4) the labor giving rise to the pension obligation was completed in St. Louis.  Id. at 11-12, 15.  Once again, however, the central issue in this case -- the meaning and enforceability of the Evergreen Clause -- renders this dispute a more apt one for this District.  Because the plan is administered in the District of Columbia and already has a history of interpretation in this Circuit, it would undermine the efficient administration of the fund to resolve disputes over its meaning and terms outside this District.  See, e.g., Capco Contractors, 711 F. Supp. 2d at 72; Painting Co., 569 F. Supp. 2d at 120; Tri-State Interiors, 357 F. Supp. 2d at 57; Veazey, 310 F. Supp. 2d at 194 (all finding venue to be most appropriate in the district where the pension plan is administered in the service of uniform interpretation and efficient administration).

The interpretation of the Evergreen Clause bears on the administration of the Trust, and administration of the Trust is not an issue local to Missouri; it is one of nationwide significance. Not only do "[t]he interests of justice and efficiency . . . encourage . . . reliance on a single body of law to resolve disputes," but "Plan participants benefit from one court's consistent oversight" and "Plan administrators . . . benefit from the certainty of uniform legal standards by being able to conform their behavior to the rules of one body of precedent."  Gipson, 563 F. Supp. 2d at 159.  This District is therefore the proper forum in which to ensure that the Plan's terms -- which affect qualifying employees nationwide -- are interpreted uniformly.

In addition, if transfers of venue were regularly granted to employers who were allegedly delinquent in contributing to pension funds, "pension funds . . . would be forced to incur enormous, if not prohibitively high, expenses to collect unpaid monies – a situation Congress

explicitly sought to prevent [by enacting] ERISA's special venue provisions." Painting Co., 569

F. Supp. 2d at 120 (citing Tri-State Interiors, 357 F. Supp. 2d at 57-58); see also Veazey, 310 F.

Supp. 2d at 194 (noting that forcing ERISA plaintiffs to litigate claims in employers' resident

forums would "undermine the financial integrity of the funds, defeating the goal of efficient

administration of ERISA plans").  The interests of justice are best served not by viewing this

case as a matter of local controversy, but by maintaining plaintiffs' suit in this Court and

ensuring the uniform interpretation of pension fund terms across all plan participants.

*     *     *     *     *

Ultimately, neither the public nor private interest factors convince the Court that transfer

of these cases back to the Eastern District of Missouri would be appropriate.  Rather, these

factors -- especially plaintiff's choice of forum and this District's interest in ensuring uniform

interpretation of the Evergreen Clause -- weigh clearly in favor of proceeding with the two

consolidated cases here.  Accordingly, the Court will deny ACLTS's motion to transfer.

IV.     **UMWA's Complaint**

ACLTS has also moved to dismiss, stay, or transfer UMWA's complaint, alleging that

UMWA's claims are duplicative of ACLTS's claims in its Missouri suit against the 1974 Pension

Plan, its Trustees and UMWA, and that the UMWA complaint should be dismissed based on the

"first-filed" status of ACLTS's complaint in the Eastern District of Missouri.  See Def.'s Mot. to

Dismiss at 1, 3.  Defendant further accuses UMWA of filing its complaint only after the briefing

in this action and the Missouri suit in an attempt to remedy flaws in plaintiffs' complaint against

ACLTS.  Id. at 4.  ACLTS's assertions are unfounded.  As previously explained, this suit was

filed prior to the action initiated by ACLTS in the Eastern District of Missouri.  Even though

UMWA's intervenor-complaint in this case was filed after ACLTS initiated its suit in the Eastern District of Missouri, the Trustees' complaint was filed eight days before ACLTS filed suit there. Accordingly, the "first-filed" rule militates in favor of hearing this dispute in the District of Columbia, not in the Eastern District of Missouri. For the same reasons that the Court will deny defendant's motion to dismiss, stay, or transfer plaintiffs' complaint, the Court will also deny defendant's motion to dismiss, stay, or transfer UMWA's complaint.

## **CONCLUSION**

For the foregoing reasons, the Court will deny ACLTS's motion to dismiss, stay, or transfer with respect to both the Trustees and UMWA. A separate Order accompanies this Memorandum Opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: July 26, 2011